## Case No. 5,591.
GOODYEAR DENTAL VULCANITE CO. v. GARDINER.
[3 Cliff. 408; 4 Fish. Pat. Cas. 224.] [1]
Circuit Court, D. Rhode Island.  June Term, 1871.[2]

LETTERS PATENT—PRIMA FACIE EVIDENCE—ABANDONMENT—VULCANITE—INFRINGEMENT — CORRESPONDENCE WITH PATENT OFFICE AS EVIDENCE—HOW PATENTS CONSTRUED.

1. When the complainant in a patent suit has introduced his letters patent in evidence, it affords a prima facie presumption that the alleged inventor was the original and first inventor of what is therein described as his invention. This is the case where the respondent is a patentee under letters patent subsequent in date which are also introduced in evidence.
[Cited in Page Woven Wire Fence Co. v. Land, 49 Fed. 937.]
[Cited in Burke v. Partridge, 58 N. H. 352.]

2. The patentee filed his caveat in 1853. During the period intermediate between the

[1] [Reported by William Henry Clifford, Esq., and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 3 Cliff. 408, and the statement is from 4 Fish. Pat. Cas. 224.]
[2] [For disposition of case by supreme court, see note at end of case.]

filing of his caveat and his application for a patent the inventor was employed in making experiments and in perfecting his invention. The court *held*, that the evidence did not show that *any invention was completed by an alleged prior inventor before the caveat was filed*, and that whatever was done by him was done while in the employ of the patentee.

3. The question of abandonment by the patentee having been fully examined in a former suit under the same patent, further discussion of it in this case was deemed unnecessary.

4. The claim of the patent was for the "plate of hard rubber or vulcanite, or its equivalent, for holding artificial teeth." The respondent used hard rubber, as he found it combined or prepared by others, as a substitute for gold or other substance in forming the plate and for holding the teeth. *Held*, it was not necessary, in order to show infringement, to prove that the respondent used the hard rubber described in the hard rubber patent referred to in the complainants' specifications.

[Cited in Goodyear Dental Vulcanite Co. v. Smith, Case No. 5,598; Same v. Willis, Id. 5,603; Colgate v. Western Union Tel. Co., Id. 2,995.]

5. The respondent used rubber for the plates as a substitute for metallic plates; he employed the same mechanical means in forming the plates, and for setting and adjusting the teeth, and heat to harden the rubber, and fit the product for practical use. *Held*, that infringement of the complainants' patent was shown, although he used a rubber compounded with iodine and not with sulphur (as did the complainants), and under a different patent.

6. The invention described in the specifications of this patent is not merely a discovery of a chemical process for preparing a described substance for use in forming plates to be used for holding the teeth, and one may be an infringer if he does not use every one of the ingredients of that process.

[Cited in Goodyear Dental Vulcanite Co. v. Smith, Case No. 5,598.]

7. Neither the correspondence between the commissioner of patents and the applicant nor the proceedings in the patent office, pending an application, are admissible as evidence to enlarge, diminish, or vary the language of the claim of a patent.

8. Patents for inventions are, if practicable, to be so construed as to uphold and not to destroy the right of the inventors.

This was a bill in equity filed to restrain the defendant [Benoni E. Gardiner] from infringing letters patent [No. 43,009] for "improvement in artificial gums and palates," granted to John A. Cummings, June 7, 1854, and subsequently reissued and assigned to complainants [March 21, 1865, No. 1,904]. The nature of the invention, and the claims of the original and reissued patents, are set forth in the report of the case of Dental Vulcanite Co. v. Wetherbee [Case No. 3,810].

Causten Browne and B. R. Curtis, for complainants.

S. J. Glassey and John A. Foster, for defendants.

CLIFFORD, Circuit Justice. Most of the questions involved in the pleadings in this case were presented in the case of the Dental Vulcanite Co. v. Wetherbee [Case No. 3,810], and were at that time carefully examined and decided. Leave, however, to reargue those questions was granted to the respondent at the hearing in this case; but the court is still of the opinion that all of the questions presented in the former case were correctly decided on the evidence then exhibited, and refers to the opinion given on that occasion for the reasons upon which that conclusion rests. Some points are made by the present respondent, and some new evidence is introduced on the issue of novelty, which renders it necessary to re-examine the case in those particulars.

He contends that the complainants are not a manufacturing corporation within the meaning of the state statute, because their rubber plates are made to order, and because they are not made by the company. Due consideration was given to that objection on the former occasion, and therefore it will be sufficient to refer to that part of the opinion as reported in the second volume of Clifford's reports. Nothing new is presented in that part of the argument.

Objections of more importance are taken to the validity of the patent, which will be separately considered. They are as follows: That the alleged invention is not new and was not patentable. That the original patentee, John A. Cummings, was not the original and first inventor of the improvement.

Construed as the patent was by the court in the former case, it is hardly denied that the described improvement was patentable; but the argument now is, that the letters patent do not cover the process for making "the plate for holding artificial teeth, or teeth and gums"; that it covers "nothing but the use of hard rubber in making plates for artificial teeth," which, it is insisted, is not patentable, as the qualities of the material were known to all the world, and that the suggestion that it could be applied to such a purpose was not a discovery or invention within the meaning of the patent law. Had the claim of the patent been such as is supposed in the proposition, there would perhaps be some foundation for the argument; but the proposition is founded on a mistaken view of what is claimed by the patentee in the second reissue.

The claim of the patent is "the plate of hard rubber or vulcanite, or its equivalent, for holding artificial teeth, or teeth and gums, substantially as described." As designated in the patent, the invention is a new and useful improvement in artificial gums; but it is described in the beginning of the specification as a new and useful improvement in plates for artificial teeth, which, perhaps, is the better general description.

Taken literally, the claim is for the product as manufactured; but when the introductory words are considered in connection with the words "substantially as described," it is clear that it includes not only the plate of hard rubber for holding artificial teeth, or

teeth and gums, but the process or mode by which they are constructed. Unsupported, as the theory of the respondent is, by any phrase or word contained in the claim or specification, it does not seem to require any argument to refute it except to say that the meaning of letters patent, like other grants or written instruments, must be ascertained by the language employed, as applied to the subject matter. Much also may be derived in construing the claim of a patent by referring to the descriptive part of the specification, and reference may also be made, if need be, to the drawings and patent-office model; but neither the correspondence between the commissioner and the applicant nor the proceedings in the patent-office are admissible to enlarge, diminish, or vary the language of the claim.

Evidence to prove the state of the art is admissible, and expert testimony to aid in expounding and defining technical words and phrases may be received, but in all other respects the rules for the construction of letters patent are the same as those applied in construing other grants and written instruments. Patents for inventions are to receive a liberal interpretation, and are, if practicable, to be so construed as to uphold and not to destroy the right of the inventors. Turrill v. Michigan S. & N. R. Co., 1 Wall. [68 U. S.] 491; Ames v. Howard [Case No. 326]. Reference in this case must be made to the descriptive part of the specification as well as to the claim, and when that is done it becomes apparent that the views of the respondent cannot be sustained.

Special reference is made by the inventor, in the first place, to the objections and inconveniences observable in the old mode of attaching artificial teeth to a metallic plate, and fitting the same to the roof of the mouth. They were, as stated in the specification, that the metal was expensive, and that the plate being hard and unyielding was apt to injure the mouth, and that its tendency was to impede mastication and obstruct articulation. He then describes the hard rubber which he uses for that purpose, characterizing it as an elastic material, possessing and retaining, when used for that purpose, sufficient rigidity for the purpose of mastication, and yet being pliable enough to yield a little to the motion of the mouth.

His invention, as he states, consists in forming the plate, to which the teeth or teeth and gums are attached, of hard rubber or vulcanite; but he proceeds at once to give a description of the manner of making the hard rubber plates, from which it appears that impressions are taken of the mouth or that part of it which the plate is to fit, of wax or plaster, in the same manner as is usually practised in the construction of gold plates for artificial teeth. Superadded to that is also a description of the means employed in setting and securing the teeth, as also of the kinds of teeth which may be employed.

They are provided with pins projecting in such a manner that the rubber will close around them and hold them securely in position. Minute description is also given of the manner in which they are set in place and adjusted to the proper distance and fulness; and when completed, the statement is that the plaster mould, with the teeth set as described, is carefully filled with soft rubber, and the same is made secure in its position by placing another plaster mould over it, and while in that condition it is heated and baked in an oven, or in some other suitable way.

Other analogous considerations might be deduced from the description of the invention as given in the specification, to negative the theory of the respondent as to the construction of the patent; but it does not seem to be necessary to pursue the subject, as those already referred to are amply sufficient to show that the views of the respondent find no substantial support from the language employed in any part of the specification.

Want of novelty is the next objection taken by the respondent to the right of the complainant to a decree, and he has introduced some new proofs under that issue in the pleadings, but they do not appear to be of a character to require any extended examination. He admits in his answer that letters patent were granted to the original patentee, as alleged in the bill of complaint, and the court adheres to the opinion that the letters patent having been introduced in evidence by the complainants afford a prima facie presumption that the patentee was the original and first inventor of what is therein described as his invention. Agawam Woolen Co. v. Jordan, 7 Wall. [74 U. S.] 596; Blanchard v. Putnam, 8 Wall. [75 U. S.] 428.

Attempt is made to show that that rule does not apply in this case because letters patent have also been granted to the respondent, but it is clear that the introduction of the respondent's patent does not change the burden of proof on the question of novelty. He must still prove the allegation of his answer that the original patentee was not the original and first inventor of his improvement. Serious doubts were formerly entertained whether the letters patent of the respondent were admissible in any view of the case, and it is still the settled rule that the question of infringement cannot be controlled or materially affected by such consideration. Blanchard v. Putnam, 8 Wall. [75 U. S.] 425; Corning v. Burden, 15 How. [56 U. S.] 271.

Since the decision in the case last named, the letters patent of the defendant are admitted in evidence on the question of novelty as entitled to some weight, where the evidence is nicely balanced, but it is quite incorrect to suppose that a patent subsequent in date can have the effect as evidence to overcome the prima facie presumption otherwise afforded by the introduction of one of prior date, that the patentee was the original and

first inventor of what is therein described as his improvement. Such a conclusion is without any foundation in principle, and finds no support in any analogy of the law or in any decided case.

Remarks upon the evidence in the former case are unnecessary, as the court is satisfied that the decree in that case was correct. Such being the fact, nothing remains to be done except to refer to the new proofs offered to show that the original patentee was not the original and first inventor of the improvement described in his letters patent. In the former case the respondent contended that the invention was made by a person in the employment of the patentee, and not by the patentee, as alleged in the bill of complaint. Instead of that the present respondent insists that it was made at an earlier date by one Robert Haering, but the court is unable to give credence to the witnesses examined to prove that defence.

Cummings's caveat was filed May 14, 1852, and it satisfactorily appears that the period between the filing of the caveat and the date of the application for the patent, was occupied, either by the inventor or his employee, in making experiments and in perfecting the invention, and the proofs do not satisfy the court that anything amounting to an invention was made by Haering before the caveat was filed. His testimony was contradictory and unreliable, and the testimony of the witnesses to confirm his statements is not of a character to add much to their probative force. Examined carefully, the better opinion from the proofs is that Haering made no such work as he describes in his testimony, prior to the time when the caveat was filed by the original patentee, and that what he accomplished was made while he was at work for an employee of the original patentee. Further discussion of the question of abandonment is unnecessary, as that defence was fully examined and overruled in the former case.

Much discussion took place at the hearing on the question of infringement, but in the view of the court it is not necessary to determine whether the material used by the respondent is the same or different from that described in the hard rubber patent to which reference is made in the specification of the complainant's patent, as it is clear that the difference, if any, as applied in making the patented product in the case, is one of form and not of substance.

Neither party necessarily manufactures the hard rubber of which the plate is composed and in which the teeth are set any more than they do the artificial teeth. Both use artificial teeth, but they take such as they find for sale, and it makes no difference whether the artificial teeth they use are alike or different, and they both use hard rubber as they find it combined and prepared or partially prepared by third persons, and they use it as a substitute for gold or other substances in forming the plate and for holding the teeth in position as adjusted in the mould.

Hard rubber, before it is heated or baked, is an elastic compound capable of being moulded like plaster or wax, and it is used in that state to fill the plaster mould in which the teeth are set and adjusted to hold the teeth in position. Before the teeth are set and adjusted to the plate, they are provided with pins, so that the soft rubber used to fill the mould will close around them and hold them securely, and while in that condition the rubber is heated or baked and becomes hard, as seen in practical use. Heat thus applied, if sufficiently intense, vulcanizes or hardens the material and converts the compound into hard rubber. Unless the soft rubber was colored before it was purchased of the manufacturer, it is colored in imitation of the natural gums by intermixing vermilion or other suitable coloring matter while in the soft state and before it is used to fill the mould. When the plate has been heated or baked sufficiently to convert the material into hard rubber the mould is removed and the plate is then polished for use.

Antecedent to the application of rubber a cast made of wax is taken of that part of the mouth which the plate is intended to fit, and from that cast the reverse plaster mould is made, and from that reverse mould the mould is made in which the teeth are set and adjusted, before the mould is filled with the rubber, as before described.

Rubber, such as the complainants use, is compounded with sulphur, etc., in the manner described in the hard rubber patent, but the rubber used by the respondent is compounded, as he contends, with iodine without sulphur and under a different patent. Suppose the fact to be as he contends, still it appears that he uses rubber for plates as a substitute for metallic plates and that he employs the same mechanical means in forming the plate and for setting and adjusting the teeth and for securing them in position as the complainants do, and he also employs heat to harden the rubber and fit the product for practical use as a substitute for natural teeth.

Two theories appear to be set up by the respondent, and they are not entirely consistent:—

1. That the invention used by the complainants is merely a discovery that hard rubber, as manufactured under the hard rubber patent, may be applied as a substitute for metallic substances in forming plates for artificial teeth and for securing the teeth in position.

2. That the invention is merely a discovery of a chemical process for preparing a described substance for use in forming plates to be used for the before-mentioned purpose, and that no one can be regarded as an infringer unless he uses every one of the ingredients of that process.

But neither of the theories is correct. Sufficient has already been remarked to refute the first suggestion, and it is quite obvious

that the second is equally fallacious and unsupported by anything to be found in the specification. Decree for the complainants.

[For other cases involving this patent, see note to Dental Vulcanite Co. v. Wetherbee, Case No. 3,810.

[NOTE. On appeal to the supreme court the judgment was affirmed, but before any opinion had been read a motion to dismiss the appeal, and also to vacate the decree of affirmance, was made. This was granted in an opinion by Mr. Chief Justice Chase, who said that, the suit having been compromised, with the understanding, however, that both parties should go on to a final hearing, and the counsel on both sides having been paid by one of the parties, the suit was collusive, and the appeal must be dismissed, the decree of affirmance vacated, and an order made to recall the mandate, which had been issued to the circuit court. 21 U. S. (Lawy. Ed.) 141.]